A. BAUER & CO. v. SIEGERT et al.

(Circuit Court of Appeals, Seventh Circuit. January 9, 1903.)

No. 891.

1. TRADE-MARKS—GEOGRAPHICAL NAME—ANGOSTURA BITTERS.

The word "Angostura," adopted in 1830 as a name for bitters then manufactured in Angostura, Venezuela, and continuously used since, although the name of the town was changed in 1846, and by which name the bitters have become widely known over the world, and which was registered as a trade-mark in the United States in 1881, is a valid trade-mark.

2. SAME—UNFAIR COMPETITION—IMITATION OF PACKAGES.

Evidence considered, and held to establish unfair competition by defendant, by appropriating the name and imitating the bottles in which Angostura Bitters were sold, and the labels thereon, and in some cases using the bottles which originally contained such bitters as the name and dress of bitters made in Chicago, with the evident purpose of selling such imitation as the genuine bitters made in Port of Spain, Trinidad, and known to the trade by that name since 1830.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

In the year 1824 Dr. Johannes G. B. Siegert, a physician and ex-surgeon general of the army of the republic of Venezuela, and the father of the appellees, and then resident of the town of Angostura, on the Orinoco river, in the republic of Venezuela, established a business in the preparation and sale of certain bitters originally named "Aromatic Bitters," but for a long time known to commerce as "Angostura Bitters." The business was continued by him during his lifetime. In 1864 he took his son Carlos, one of the appellees, into partnership, continuing the business under the same name until the year 1867, when the firm name was changed to "Dr. J. G. B. Siegert &

¶ 1. Use of geographical names as trade-names, see notes to Hoyt v. J. T. Lovett Co., 17 C. C. A. 657, 31 L. R. A. 44; Illinois Watch Case Co. v. Elgin Nat. Watch Co., 35 C. C. A. 242.

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

120 F.—6

Hijos." In the year 1846 the name of the town Angostura was changed by decree of state to that of Ciudad Bolivar, since which time the name "Angostura," as the name of a town, has officially ceased to exist, and gradually, as matter of fact, has ceased to be used. The business continued to be carried on by Dr. Siegert and his son Carlos at Ciudad Bolivar until the death of the father at that place in the year 1870. The firm, however, had done their shipping through the firm of Gerold & Ulrich from Port of Spain, in the island of Trinidad. Carlos D. Siegert, the surviving partner, continued the business under the old firm name at Ciudad Bolivar until the year 1872, when his brother, Alfredo C. Siegert, was admitted to the partnership, and the firm name was changed to Dr. J. G. B. Siegert & Hijos. They continued the business, and in 1875 removed their factory to Port of Spain, Trinidad, where the business has since been, and is now, conducted. In 1876 Luis B. C. Siegert, a brother, was admitted to the firm, which has since been, and is now, constituted of the three brothers. These bitters are compounded according to a secret formula known only to the Siegert family, and are sold in every continent; the sales in the United States being in amount between 10,000 and 15,000 cases a year. One thousand to 1,500 cases are sold annually in the state of Illinois, of which Chicago consumes from 500 to 1,000 cases. The name "Angostura" was first applied by the public to these bitters from the name of the town at which they were made. This name was accepted by Dr. Siegert in the year 1830, and employed by him and his successors as the distinctive name for the bitters. It has been printed on the labels and used upon business cards and stationery and in advertising the goods, and was registered in the patent office at Washington as a trade-mark or trade-name on the 14th day of June, 1881, upon application filed May 21, 1881. The bitters are put up in glass bottles of two sizes,—whole and half bottles. These are of a peculiar form, and of a dark greenish tint, with the name "Dr. J. G. B. Siegert & Hijos" blown in the shoulder and neck and also in the bottom of the bottles. Around the neck of the bottle since the year 1884, upon goods imported into the United States, is a label in the similitude of a revenue stamp of the United States theretofore existing, with rounded corners, about 2¾ inches long and 1⅛ inches wide, in the middle of which is a stamp-shaped cut or figure in yellow, having in its center a representation of the head and bust of Dr. J. G. B. Siegert, surrounded by an oval border, upon which are arranged the words: "Angostura Bitters. Dr. J. G. B. Siegert." About the border are arranged scrolls, upon one of which is printed the figures "1830," and upon the other is printed the words "The Only Genuine." A plain oblong border incloses the picture described. On either side of the picture are arranged two concentric circles, on one of which is inscribed the words "J. W. Wupperman, New York, Sole Agent of," and upon the other the words "Dr. J. G. B. Siegert & Sons, Port of Spain, Trinidad, B. W. I." The label upon the body of the bottle is about 10⅜ inches long and 6⅛ inches wide, upon which is printed in black ink, in the English, German, French, and Spanish languages, a description of the properties and qualities of the bitters, with the trade-name "Angostura Bitters," and a fac-simile signature of Dr. J. G. B. Siegert printed lengthwise between the obverse and reverse sides of a medal,—one at the top and one at the bottom,—on an oblong white strip, about 1 inch wide, running vertically from the middle of the top of the label to the narrow strip of printing in French, 1¼ inches wide, and extending entirely across the bottom of the label, which inscription in French, when the label is pasted upon the bottle, is folded entirely around and over the bottom of the bottle and can only be read by unfolding it. The English, German, and Spanish descriptions are printed in columns of the same length as, and running parallel with, the white strip bearing the fac-simile signature and medal. The guaranty or caution in English, German, French, and Spanish languages, bearing index hands, is printed on a strip running parallel with the white strip containing the fac-simile signature and medal. The bottles are sealed with reddish brown sealing wax. The goods have always been put up in this form and manner, except that the original label has been slightly altered in matters of detail; the general form, style, and substance being preserved. The name "Angostura Bitters" is placed on every box containing these goods shipped from Port of Spain, and has been employed in

advertising the goods, and is the exclusive name used to designate and distinguish these bitters.

The appellant, a corporation located at the city of Chicago, in the state of Illinois, and of which Alexander Bauer is the president, well knowing of the bitters made by the appellees, and the character of the packages which contained them, and the labels thereon, lately placed upon the market a bitters of its own, in a bottle of nearly the same size and shape as the bottle of the appellees, with a neck label of substantially the length and width of the neck label of the appellees, in the middle of which is a stamp-shaped cut or figure of substantially the size and shape and of the same color as appellees', in the center of which is a monogram "T. H. Co."; being the initials of the name of the Tucker-Hardy Company, under which name a department of the appellant's business is conducted. These occupy the same relative position as do the head and bust of Dr. Siegert on the neck label of the appellees, inclosed by an oval border of substantially the same size, shape, and color as the appellees', upon which are arranged the words "Tucker-Hardy Company" in white letters, and in the same relative position as the words "Angostura Bitters, Dr. J. G. B. Siegert," in the neck label of the appellees. At either side of the stamp-shaped figure are arranged two half circles, on one of which is printed the word "Angostura," and on the other the words "Bark Bitters." The body label is of the same shape as that of the appellees, having a white background, and printed thereon in black ink a description of the supposed qualities and properties of the bitters in the English, German, and Bohemian languages, together with the name "Angostura Bitters," and the signature in script, "The Tucker-Hardy Company," of the same general appearance and in the same relative position as upon the body label of the appellees, and printed lengthwise between two cuts or figures, one at the top and one at the bottom of an oblong strip about 1 inch wide, like to that of the appellees, running vertically from the middle of the top of the label to the bottom thereof; the English, German, and Bohemian description being printed in columns of the same length, and running parallel with the white strip bearing the fac-simile signature. There are two cuts, in imitation of and in the same relative position as the appellees', in substantially the same style, form, and arrangement of type, lettering, cut, design, figures, and marks, upon the like character of paper, with the guaranty caution in the English, German, and Bohemian languages, bearing index hands, printed in substantially the same form, arrangement, lettering, cut, design, figures, and marks as in that of the appellees. This body label, as in the case of the appellees', covers the body of the bottle. These bottles are also sealed with a reddish brown sealing wax. Prior to the commencement of the suit the appellant purchased bottles which had contained the bitters of the appellees, and in which were blown the name "Dr. J. G. B. Siegert & Hijos," and to some extent put up and sold their bitters in those bottles; claiming, however, that the appellant first knew it was using such bottles when this suit was instituted.

The bill was filed to enjoin the appellant from selling its goods thus clothed, from palming off its product as that of the appellees, and from the use of the word "Angostura" in connection with the article of bitters. A decree was passed fully enjoining the appellant from the use of the dress described, and from the use of the word "Angostura," from which decree an appeal is taken to this court.

James A. Fullenwider and John Stuart, for appellant.
Wm. M. Copeland, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). This is to us a plain case. The dress employed by the appellant, the character and color of the bottle, the character and color of the neck label, the character, color, and arrangement of letterpress on the body label, and the unusual covering of the bottom of the bottle with

the label, renders it clear that the appellant sought to, and did, palm off its goods as those of the appellees. If confirmation were needed, it is found in the use by the appellant of the bottles which had contained the bitters of the appellees. We cannot credit the assertion of the appellant that the use of the old bottles upon which was blown the name "Dr. J. G. B. Siegert & Hijos" was inadvertent. The resemblances in every feature of the dress are too marked to permit us to place faith in the statement. The design is so evident that it challenges belief in the assertion of ignorance or inadvertence. It is not necessary to consume time upon so flagrant an imitation and so manifest a design.

It is alleged that the word "Angostura" is not the subject of a trade-mark or a trade-name. We cannot sustain the contention. For upwards of half a century no town has existed by that name; and, even if the old town of Angostura were still known by that name, the appellant would not be permitted by fraudulent imitation to deceive the public and wrong the appellees by palming off its goods as their goods. The bitters of the appellant are made in the city of Chicago. The name "Angostura Bitters" had acquired, long before the appellant commenced the manufacture of its goods, a world-wide celebrity. The appellant cannot be permitted to usurp that name, and dress its goods like those of the appellees, and thereby defraud the public. Pillsbury v. Flour Mills Co., 64 Fed. 841, 12 C. C. A. 432; Flour Mills Co. v. Eagle, 86 Fed. 608, 30 C. C. A. 386, 41 L. R. A. 162; Siegert v. Findlater, 7 Ch. Div. 801.

The objection that the product of the appellees is not shown to have medicinal properties, and that they were guilty of fraud in publishing to the world that it has medicinal properties, and that therefore they can have no standing in a court of equity, cannot be sustained. No such fraud is charged in the answer, and no such fraud is proven. It is not to be presumed, to enable the appellant to perpetrate its own fraud.

The decree is affirmed.